UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
MICHAEL GAGLIANO,

                                Plaintiff,

            - against -

COUNTY OF SUFFOLK, P.O. TIMOTHY
VICINANZA, P.O. BRIAN McMURRAY,
P.O. JOHN DOE 1-2, SGT. BRENDAN
PILKINGTON and LT. JOHN ROE,

                              Defendants.
---------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
CV 18-1895 (JMA)(ARL)

**LINDSAY, Magistrate Judge:**

      Plaintiff Michael Gagliano ("Plaintiff") brings this action against the County of Suffolk

(the "County") and Suffolk County Police Officers Timothy Vicinanza,[1] Brian McMurray and

Brendan Pilkington (the "Individual Defendants, and together with the County, "Defendants")

for violation of his constitutional rights, pursuant to 42 USC § 1983 and the New York

constitution, as well as for negligence.  Before the Court, on referral from District Judge Azrack,

is the motion by Defendants for summary judgment pursuant to Federal Rule of Civil Procedure

("Rule") 56.  For the reasons set forth below, the Court respectfully recommends that

Defendants' motion be granted, in part, denied, in part.

## BACKGROUND

**I.    Factual Background**

**A.  Local Rule 56.1**

---

[1] In the Complaint, Plaintiff's opposition papers and the Alcohol/Drug Influence Report, attached as Exhibit L to Plaintiff's Declaration the Officer's name is spelled as Vicinanza, but, referred to in Defendants' motion as Vicananza.  For purposes of this Report and Recommendation the Court shall adopt the spelling used by Plaintiff and in the Alcohol/Drug Influence Report -- Vicinanza.

As an initial matter, the Court notes that Plaintiff failed to follow the directives of Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1").  Local Rule 56.1 provides as follows:

> The papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried.

Local Civil Rule 56.1(b); *Suares v. Cityscape Tours, Inc*., 603 F. App'x 16, 17-18 (2d Cir. 2015).  Here, Plaintiff did not respond to Defendants' Statement Pursuant to Local Rule 56.1 ("Def. Rule 56.1 Stmt.").  Instead, Plaintiff submitted an entirely new Local Rule 56.1 Statement, Plaintiff's Rule 56.1 Counter Statement of Material Facts ("Pl. Rule 56.1 Stmt."), that does not respond to the numbered paragraphs in Defendants' Rule 56.1 Statement.  "The rule states that each paragraph of the movant's statement that is not 'specifically controverted by a correspondingly numbered paragraph in' the counterstatement 'will be deemed to be admitted for purposes of the motion.'"  *Suares,* 603 F. App'x at 17-18; *United States v. Schwartz*, No. 18-CV-1583 (ARR) (VMS), 2022 U.S. Dist. LEXIS 127857 (E.D.N.Y. July 19, 2022) (where party opposing summary judgment submits their own statement of facts, rather that admitting or denying the statement of facts as presented, the moving parties' statement of facts deemed admitted); *see also T.Y. v. N.Y. City Dep't of Educ*., 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible").  Accordingly, the facts set forth in Defendants' Rule 56.1 Statement are deemed admitted.

Additionally, the Court will disregard Plaintiff's Rule 56.1 Statement since Plaintiff is not moving for summary judgment and therefore this document is superfluous.  *See, e.g., Chen v.*

*Stony Brook Univ.*, No. CV 15-6698 (JMA)(AYS), 2020 U.S. Dist. LEXIS 128608, 2020 WL 7047305 (E.D.N.Y. July 20, 2020) (Plaintiff's 56.1 Counter Statement of Material Facts, "is irrelevant since Plaintiff is not moving for summary judgment herein, but rather is merely responding to Defendants' motion. Accordingly, the Court will disregard Plaintiff's additional Counter-Statement of Material Facts").  However, mindful of the fact that "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules" *see Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir. 2001), the undersigned has also undertaken a comprehensive, independent review of the record. Accordingly, the facts that follow are still construed in the light most favorable to the non-moving party, except as otherwise noted. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).

### B.  Facts

The following facts are drawn from Defendants' Local Rule 56.1(a) Statement and are deemed admitted, unless otherwise noted.

Plaintiff Michael Gagliano is a citizen of the State of New York and a resident of Suffolk County.  Compl. ¶ 3.  On December 30, 2016, Plaintiff met several friends at a bar located in Patchogue, New York.  Def. Rule 56.1 Stmt. ¶ 4.  While at the bar, Plaintiff consumed a pint of beer.  *Id.* at ¶ 5.  The group then sat for dinner and Plaintiff consumed two more pints of beer and had some food.  *Id.* at ¶ 6.  Plaintiff left the bar at approximately 10:45 p.m. with a friend that had joined him at dinner.  *Id.*  After leaving the bar, Plaintiff went to his car which was parked in the lot behind the restaurant and was planning to drive his friend to her car which was parked approximately 1/8 to 1/4 mile from the bar.  *Id.* at ¶ 8.

Plaintiff and his friend got into his car and drove out of the parking lot onto North Ocean Avenue and made a left turn to go north.  *Id.* at ¶ 9.  As he neared his friend's car, Plaintiff saw the headlights of a police vehicle coming up behind him. He pulled his car into a driveway of a

medical building on the right side of the road. *Id.* at ¶ 10. Defendant Suffolk County Police Officer Timothy Vicinanza got out of the police vehicle and went over to Plaintiff's car.[2] *Id.* at ¶ 12. According to Defendants, Officer Vicinanza smelled alcohol on Plaintiff's breath and noticed that his speech was slurred, his reactions were slowed and his pupils were constricted. *Id.* at ¶ 14. Officer Vicinanza asked Plaintiff where he was coming from and if he had been drinking. *Id*. Plaintiff acknowledged that he had consumed three pints of beer. *Id.* Officer Vicinanza asked Plaintiff if he had taken any medication and he replied that he had taken Wellbutrin.[3] *Id.*

To determine whether Plaintiff was impaired by alcohol or drugs, Officer Vicinanza conducted several field sobriety tests. *Id.* at ¶ 15. First, he administered the horizontal gaze nystagmus test, noting that Plaintiff was swaying during the test, but the officer opined that Plaintiff had passed that test. *Id.* Officer Vicinanza then administered the walk and turn test, observing that Plaintiff failed the test since he displayed all eight clues of non-sobriety that the test looks for. *Id.* at ¶ 16. Officer Vicinanza did not note the clues that Plaintiff missed. Next, Officer Vicinanza had Plaintiff perform the one leg stand test. *Id.* at ¶ 17. According to Defendants, this test looks for four clues of non-sobriety with the presence of two being considered a failure, and Officer Vicinanza noted that Plaintiff exhibited all four clues. *Id.* Officer Vicinanza then gave Plaintiff the lack of convergence sobriety test, that Plaintiff passed. *Id.* at ¶ 18. Officer Vicinanza next conducted the Romberg test, a sobriety test that looks at the

---

[2] As of December 2016, Officer Vicinanza had made over 700 arrests for driving while intoxicated and had assisted in hundreds more. He had also made arrests for driving while impaired by drugs prior to December 2016. *Id.* at ¶ 13.

[3] Plaintiff has been taking prescribed medication for his mental health since approximately 2005. The prescribed medications have included Zoloft, Wellbutrin and Ritalin. *Id.* at ¶ 1. In December 2017 [sic], Wellbutrin was prescribed for Plaintiff, however, he was uncertain of the dosage prescribed for him at the time. *Id.* at ¶ 2. Wellbutrin (generic name buproprion), is manufactured by Glaxo Smith Kline Pharmaceutical. It is an antidepressant medication. *Id.* at ¶ 3.

neurological function of balance and he observed that Plaintiff performed poorly on the Romberg test. *Id.* at ¶ 19. Finally, Officer Vicinanza administered a breath alcohol test to Plaintiff using a device called an Alco-Sensor. As he informed Plaintiff, the test indicated a blood alcohol level of .027. *Id.* at ¶ 20. This is below the threshold of .08 which is required for an arrest for driving while intoxicated. *See* N.Y. Vehicle and Traffic Law §1192.2 ("Driving while intoxicated; per se. No person shall operate a motor vehicle while such person has .08 of one per centum or more by weight of alcohol in the person's blood as shown by chemical analysis of such person's blood, breath, urine or saliva"). Officer Vicinanza performed the field sobriety tests in accordance with the National Highway Traffic Safety Administration standards that he had been trained in. *Id.* at ¶ 21.

After performing all of the field sobriety tests, Officer Vicinanza testified he felt confident that Plaintiff should be arrested for driving while impaired, however, instead of proceeding with an arrest at that time, Officer Vicinanza called defendant Suffolk County Police Officer Brian McMurray for a second opinion because Officer McMurray is a Drug Recognition Expert ("DRE") and Officer Vicinanza is not. *Id.* at ¶ 22. Officer Vicinanza told Officer McMurray that he had observed that Plaintiff's pupils were a little constricted, and that his performance on the walk and turn and one leg stand tests was consistent with drug impairment and he asked Officer McMurray to "take a look" at Plaintiff. *Id.* at ¶ 25. Officer Mc Murray asked Plaintiff if had had been drinking and Plaintiff said he had a "couple or a few." Officer McMurray also asked Plaintiff if he had taken any medication and Plaintiff said that he had taken Wellbutrin. *Id.* at ¶ 26. Officer McMurray began conducting field sobriety tests. He first conducted the horizontal gaze nystagmus test. He checked Plaintiff's eyes for smooth pursuit and saw that he had smooth pursuit in both eyes. *Id.* at ¶ 27. Officer McMurray observed that

Plaintiff's eyes were a little bloodshot and that his pupils were constricted with little to no reaction to light. He also observed that Plaintiff's speech was a little slurred and that he had "kind of a sway." Further, he also observed that Plaintiff did not have distinct and sustained nystagmus at maximum deviation. *Id.* at ¶ 28.  Officer McMurray then tested for Plaintiff's eyes for the onset of nystagmus prior to 45 degrees with a negative result. Next, he checked for vertical gaze nystagmus which is not a clue for impairment but an indication for certain drugs and alcohol. Officer McMurray observed no vertical gaze nystagmus. No clues of impairment were seen in this test. *Id.* at ¶ 29.  Officer McMurray then Plaintiff perform the walk and turn test. Before the test began, he noticed Plaintiff swaying and shuffling his feet to steady his balance. According to Defendants, of the eight clues of drug or alcohol impairment, Plaintiff displayed four. Two or more clues is a sign of alcohol intoxication. *Id.* at ¶ 30.  The next test Officer McMurray had Plaintiff perform was the one leg stand test, which tests for drug or alcohol impairment. Plaintiff swayed during the test. Plaintiff performed poorly on the test, with Office McMurray observing most of the clues. *Id.* at ¶ 31. Officer McMurray then conducted a lack of convergence test. A lack of convergence was seen. *Id.* at ¶ 32.  Officer McMurray twice conducted a reaction test of Plaintiff's pupils and observed that the pupils were constricted and had little reaction to light. *Id.* at ¶ 33.  Officer McMurray concluded that Plaintiff was impaired by drugs. His conclusion was based on Plaintiff's poor performance on the tests, his admission that he had taken an antidepressant and consumed alcohol, his unsteadiness on his feet, slurred speech, constricted pupils and the totality of the information given to him by Officer Vicinanza. *Id.* at ¶ 34.  Officer McMurray informed Plaintiff that he had failed the field sobriety tests and would be placed under arrest.  Officer Vicinanza handcuffed Plaintiff and placed him in his police vehicle. *Id.* at ¶ 35.

After being handcuffed and prior to being placed in the police vehicle, Plaintiff was not experiencing pain from the handcuffs. After getting in the police vehicle, Plaintiff claims that when he leaned forward in the seat due to the handcuffs behind his back, the handcuffs felt too tight. *Id.* at ¶ 36. According to Plaintiff, before the police vehicle left the scene for the precinct, he told Officer Vicinanza that the handcuffs were hurting him. Plaintiff also said to Officer Vicinanza "you're making a mistake." He did not say anything else to Officer Vicinanza on the drive to the precinct which he claims took approximately 10 minutes. *Id.* at ¶ 37. According to Plaintiff, the first thing he can recall occurring after he entered the precinct was that he was seated and his right hand cuff was removed. The discomfort he was allegedly experiencing was relieved when his right handcuff was removed. *Id.* at ¶ 38.

Officer Brandon Pilkington was not at the scene of Plaintiff's arrest as he was assigned to work the desk at the Fifth Precinct that night. He interviewed Plaintiff at the precinct at 11:27 p.m., seven minutes after his arrest, and began filling out the form known as a Prisoner Activity Log. *Id.* at ¶ 39. In the box for visible physical condition, Sgt. Pilkington wrote "no visible injuries, bloodshot eyes." In the box where the desk sergeant is to write the details of any claim of pain, injury or illness by the prisoner, Sgt. Pikington wrote "none claimed. Takes Wellbutrin for smoking/depression." *Id.* at ¶ 40. The Prisoner Activity Log does not reflect any complaint of pain or injury being made by Plaintiff at any time while in custody. *Id.* at ¶ 41. At the precinct, Officer Vicinanza interviewed Plaintiff to prepare a Suffolk County Police Department form called "Alcohol/Drug influence Report." As part of the interview, he asked Plaintiff what medication he was taking. Plaintiff told him he was taking Wellbutrin and Valtrex. Officer Vicinanza noted Plaintiff's responses on the Alcohol/Drug Influence Report. *Id.* at ¶ 42. At the

precinct at 12:44 A.M., Plaintiff's blood was drawn to be tested for alcohol and illicit drugs. *Id.* at ¶ 43.

Officer Vicinanza charged Plaintiff with violations of N.Y. Vehicle and Traffic Law §1192.4, Driving While Ability Impaired by Drugs, and §1181, Minimum Speed violations. *Id.* at ¶ 44. In January 2017, the Suffolk County Office of the Medical Examiner performed a toxicology screen on the blood drawn from Plaintiff at the precinct approximately two hours after he left the restaurant. No illicit drugs or alcohol were detected in the blood. *Id.* at ¶ 45. On August 10, 2017, the charge of Operating a Motor Vehicle While Under the Influence of Alcohol or Drugs was dismissed by District Court, County of Suffolk in the interest of justice pursuant to N.Y. Criminal Procedure Law §170.30 (1)(g). *Id.* at ¶ 46. On August 17, 2017, District Court County of Suffolk dismissed the Minimum Speed violation pursuant to N.Y. Criminal Procedure Law §170.30. *Id.* at ¶ 47.

In the discovery process, Plaintiff has produced no medical records reflecting that he sought any medical treatment in the two months following his arrest. *Id.* at ¶ 48.

## II.    Procedural History

Plaintiff commenced this action on March 28, 2018. ECF No. 1. The complaint asserts five causes of action: (1) deprivation of Plaintiff's Fourth Amendment rights pursuant to 42 U.S.C. § 1983 ("Section 1983") against the Individual Defendants; (2) municipal liability against the County; (3) malicious prosecution pursuant to Section 1983 against the Individual Defendants; (4) negligence against the Individual Defendants; and (5) excessive use of force pursuant to Section 1983 and New York common law against the Individual Defendants.

Follow a series of requests extending the time to complete discovery, Judge Feuerstein ordered that discovery was to be concluded on September 25, 2019 and that no further extensions

8

would be granted.  Judge Feuerstein also set a briefing schedule for Defendants' anticipated motion for summary judgment.  That schedule was also extended at the parties' request and the motion for summary judgment was ultimately filed on March 12, 2020.  ECF No. 41.  This matter was reassigned to District Judge Azrack on June 11, 2021.

On September 28, 2021, Judge Azrack denied Defendants' motion for summary judgment, without prejudice to refiling, noting that the motion had not been properly filed. Defendants refiled the motion for summary judgment on September 28, 2021.  ECF No. 43. Defendants have moved for summary judgment, dismissing all of Plaintiff's claims. In support of the motion for summary judgment Defendants rely upon their Rule 56.1 Statement, which attaches exhibits, along with Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Def. Mem").  Plaintiff has opposed the motion, however as noted above, Plaintiff's Rule 56.1 Counter Statement of Material Facts does not comport with the Court's rules in that it fails to address Defendants' Rule 56.1 Statement.  Additionally, Plaintiff submits Plaintiff's Declaration in Opposition to Defendants' Motion for Summary Judgment, attaching exhibits, along with Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp.").   Defendants have submitted a reply memorandum of law, however, Defendants have not responded to Plaintiff's Rule 56.1 Counter Statement of Material Facts ("Def. Reply Mem.").

By Order dated May 10, 2022, Judge Azrack referred the motion to this Court for a Report and Recommendation.

## DISCUSSION

### I.    Standard of Law -- Summary Judgment

"'Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law.'" *Puglisi v. Town of Hempstead*, No. 10 CV 1928, 2012 WL 4172010, *6 (E.D.N.Y. Sept. 17, 2012) (quoting *In re Blackwood Assocs., L.L.P.,* 153 F.3d 61, 67 (2d Cir. 1998) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c)).  In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party.  *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc*., 150 F.3d 132, 137 (2d Cir. 1998).  If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable.  *See Holt v. KMI-Continental, Inc*., 95 F.3d 123, 129 (2d Cir. 1996), *cert denied*, 520 U.S. 1228 (1997).

The trial court's responsibility is "limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994).  When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "[T]here must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim." *Jamaica Ash & Rubbish v. Ferguson*, 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000) (quoting *Celotex,* 477 U.S. at 322).  A moving party may obtain summary judgment by demonstrating that little or no evidence may be found in support of the non-moving party's case.  "When no rational jury could find in favor of the nonmoving party because the evidence to

support its case is so slight, there is no genuine issue of material fact and a grant of summary

judgment is proper." *Marks v. New York Univ.*, 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999).

## II.   Analysis

### A.  False Arrest

Defendants move for summary judgment on Plaintiff's claim of false arrest pursuant to

Section 1983 on the ground that a plaintiff can have no claim for false arrest where the arresting

officer had probable cause.  Def. Mem. at 4.

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual

to be free from unreasonable seizures, including arrest without probable cause, is substantially

the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d

Cir. 1996), cert. denied, 528 U.S. 946 (1999) (internal citations omitted); accord *Jenkins v. City*

*of New York,* 478 F.3d 76, 84 (2d Cir. 2007).  Under New York law, a plaintiff bringing a claim

for false arrest must show that "(1) the defendant intended to confine [the plaintiff], (2) the

plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement

and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cty. Sheriff*, 63 F.3d

110, 118 (2d Cir. 1995) (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 335 N.E.2d

310, 314, 373 N.Y.S.2d 87 (N.Y. 1975)) (internal quotation marks omitted).

A confinement is privileged where the arresting officer had probable cause to arrest.  *See*

*Jocks v. Tavernier,* 316 F.3d 128, 135 (2d Cir. 2003).  Probable cause is a complete defense to a

false arrest claim, both under state law and Section 1983.  *Jenkins*, 478 F.3d at 84.  "[P]robable

cause to arrest exists when the officers have knowledge or reasonably trustworthy information of

facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief

that the person to be arrested has committed or is committing a crime." *Weyant,* 101 F.3d at 852.

"[C]ourts examine the totality of circumstances surrounding the arrest, including the actual

information known to the officer at the time of the arrest, and then decide whether those facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Hoyos v. City of New York*, 999 F. Supp. 2d 375, 386 (E.D.N.Y. 2013).

"In a lawsuit claiming false arrest, '[t]he burden of establishing the absence of probable cause rests on the plaintiff.'" *Lin v. City of New York*, No. 14 Civ. 9994, 2016 U.S. Dist. LEXIS 177046, 2016 WL 7439362, at *7 (S.D.N.Y. Dec. 21, 2016) (quoting *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 524 (S.D.N.Y. 2015)). On summary judgment, the existence of probable cause may be determined as a matter of law "if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant*, 101 F.3d at 852. It is not for the district court "to credit [a] version of the facts and enter judgment based on its own view that [one] version was more likely true." *Weyant*, 101 F.3d at 855. "The weighing of the evidence and the determination as to which version of the events to accept are matters for the jury." *Id.; see also Moore v. Comesanas*, 32 F.3d 670, 673 (2d Cir. 1994) (finding that where question of whether arresting officer had probable cause was "predominantly factual in nature, [it] was properly presented to the jury").

Here, Plaintiff argues that a question of fact exists as to whether there was probable cause for the initial traffic stop. According to Plaintiff, Defendants had no reasonable suspicion to stop the Plaintiff, subjecting him to an illegal traffic stop. Pl. Opp. at 2. Plaintiff was stopped by the Defendants pursuant to N.Y. VTL § 1181(a) for allegedly stopping his vehicle and impeding traffic. *Id.* Under the statute, '[n]o person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law." N.Y. VTL § 1181(a). Defendants' Rule 56.1 Statement, which is deemed admitted, does not set forth the basis for the initial traffic stop.

Therefore, the Court cannot determine as a matter of law that probable cause existed for the initial traffic stop or for Plaintiff's arrest for §1181, Minimum Speed violations.

The Court's inquiry does not stop there, the Court must next consider whether there was probable cause for Plaintiff's arrest for violations of N.Y. Vehicle and Traffic Law §1192.4, Driving While Ability Impaired by Drugs. [4]  Defendants argue that Plaintiff cannot demonstrate that the Individual Defendants lacked probable cause for the arrest for driving while impaired by drugs because he admittedly consumed 48 ounces of beer in the approximately two and one half hours before he was pulled over, had also taken Wellbutrin, an antidepressant that should not be combined with alcohol and Officer Vicinanza smelled alcohol on his breath and observed his speech was slurred.  Def. Rule 56.1 Stmt. ¶ 14.  Defendants also note that Plaintiff failed certain of the field administered sobriety tests, but acknowledges he passed others.  *See, e.g., id.* ¶¶ 15-20.  Defendants also offer testimony of Officer McMurray who observed that Plaintiff's eyes were bloodshot, with constricted pupils and little to no reaction to light; his speech was a little slurred; he had "kind of a sway."  *Id.* at ¶ 28.  In response, Plaintiff advances arguments seeking to undermine Defendants' Undisputed Statement of Fact, which have been deemed admitted because of Plaintiff's failure to properly dispute those facts.  The Court has considered the arguments raised by Plaintiff, despite this failure and notes that Plaintiff has pointed to facts which contradict or discredit Defendants' position.  *See, e.g.,* Pl. Opp, at 8 (Officer Vicinanza testified Plaintiff's eyes were constricted but not measurements were taken and the test was

---

[4] "The lack of probable cause to stop and search does not vitiate the probable cause to arrest, because (among other reasons) the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant." *Townes v. City of New York,* 176 F.3d 138, 149 (2d Cir. 1999*); Kennedy v. City of New York,* 11-CV-1451, 2013 U.S. Dist. LEXIS 96096, 2013 WL 3490351(E.D.N.Y. July 10, 2013) (plaintiff "would be able to recover only the nominal damages arising from the minor invasion of privacy occasioned by the stop of his car [as] [h]is subsequent arrest was clearly supported by probable cause and therefore caused no damages for which he could recover"); *Pane v. Town of Greenburgh*, No. 07-Civ-3216 (LMS), 2012 U.S. Dist. LEXIS 193860, 2012 WL 12887036 (S.D.N.Y. Jan. 10, 2012).

performed using a flashlight rather than indoors); Pl. Opp. at 8 (Officer Vicinanza's statement that he smelled alcohol on Plaintiff's breath is not supported by the officer's field sobriety notes, which fail to note the smell of alcohol); Pl. Opp. at 9 (Officer Vicinanza failed to document which clues were missed by Plaintiff on the walk and turn test as required); Pl. Opp. at 10 ("Defendant Vicinanza testified that the Plaintiff raised his right foot, while balancing on his left foot. . . . However, in his Field Sobriety Test Notes, he marks that the Plaintiff was balancing on his right foot and lifted his left foot"); Pl. Opp. at 10 (Officer McMurray claims to have conducted the walk and turn test a second time but no report was completed).   In addition, Plaintiff has submitted a report by Frank Novakowski, Novakowski DWI Consulting indicating that the psychophysical tests administered to Plaintiff, such as the walk and turn test and the one leg stand test are unreliable when administered to an individual such as Plaintiff who is more than 50 pounds overweight.  Plaintiff's Statement of Uncontested Facts, Ex. H at 7.  Because Plaintiff has put forth evidence in opposition to each of Defendants purported "undisputed facts," the Court cannot determine that probable cause for the arrest existed as a matter of law because there are disputes "as to the pertinent events and the knowledge of the officers." *Weyant*, 101 F.3d at 852.

Accordingly, the undersigned respectfully recommends that Defendants' motion for summary judgment with respect to Plaintiff's claim for false arrest for violations of N.Y. Vehicle and Traffic Law §1192.4, Driving While Ability Impaired by Drugs, and §1181, Minimum Speed Violations be denied.

### B.  Malicious Prosecution

#### 1.  Lack of Probable Cause

Defendants also move for summary judgment on Plaintiff's claim on malicious prosecution arguing that "a claim of malicious prosecution claim is untenable if the prosecution

is supported by probable cause." Def. Mem. at 5 (citing *Rothstein v. Carriere*, 373 F.3d 275 (2d Cir. 2004)).

To succeed on a malicious prosecution claim under § 1983, a plaintiff must establish the elements of a malicious prosecution claim under New York law along with a violation of her rights under the Fourth Amendment. *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010). As such, a plaintiff must show (1) the defendant commenced or continued a criminal proceeding against the plaintiff; (2) the proceeding was terminated in the plaintiff's favor; (3) there was no probable cause for commencing the proceeding; (4) the proceeding was instituted with "actual malice"; and (5) there was a post-arraignment liberty restraint sufficient to implicate the plaintiff's Fourth Amendment rights. *McKay v. City of New York*, 32 F. Supp. 3d 499, 511 (S.D.N.Y. 2014) (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) (internal quotation marks omitted)); accord *Droz v. McCadden*, 580 F.3d 106, 109 (2d. Cir. 2009); *Drummond v. Castro*, 522 F. Supp. 2d 667, 677 (S.D.N.Y. 2007). A police officer may be liable for malicious prosecution if he "played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act" or if he "fabricates evidence or withholds relevant and material information from the prosecutor." *Andrews v. Johnson*, No. 21-CV-8310, 2022 U.S. Dist. LEXIS 9053, 2022 WL 158538, at *4 (S.D.N.Y. Jan. 18, 2022) (quoting *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006)).

The existence of probable cause is a complete defense to a claim of malicious prosecution. *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). However, the same factual issues surrounding whether there was probable cause for Plaintiff's arrest apply to his malicious prosecution claim. Accordingly, for the reasons set forth above in connection with Plaintiff's false arrest claim, this Court finds summary judgment on Plaintiff's malicious

15

prosecution claim similarly inappropriate and recommends that Defendants' motion on this claim be denied.

### 2.  Lack of Favorable Dismissal

Defendants also argue that Plaintiff's claim for malicious prosecution must be dismissed because the underlying prosecution was not terminated favorably to Plaintiff since the dismissal was without explanation in the interest of justice pursuant to N.Y. Crim. Proc. Law § 170.30. Def. Mem. at 11. Plaintiff contends that the question of whether the termination was favorable is an issue of fact for the jury.  Pl. Opp. at 17.

Recently, the United States Supreme Court overturned long standing Second Circuit precedent and ruled "in sum, we hold that a Fourth Amendment claim under §1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction." *Thompson v. Clark*, 142 S. Ct. 1332, 1335, 212 L. Ed. 2d 382 (2022) (abrogating *Lanning v. City of Glens Falls*, 908 F. 3d 19 (2d. Cir. 2018)).  Accordingly, the undersigned respectfully recommends that Defendants' motion for summary judgment on this basis be denied.

### C.  Lack of Excessive Force

Defendants move for summary judgment with respect to Plaintiff's claim of excessive force arguing that Plaintiff has failed to demonstrate any of the three elements necessary to establish an excessive force claim based on handcuffing.  Def. Mem at 14.

Excessive force claims brought under Section 1983 are "judged under the Fourth Amendment's 'objective reasonableness' standard." *Terranova v. New York*, 676 F.3d 305, 308 (2d Cir. 2012) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 197, 125 S. Ct. 596, 160 L. Ed. 2d

583 (2004)).  In order to establish an excessive force claim in violation of the Eighth

Amendment, a plaintiff must show that officials applied force not "in a good-faith effort to

maintain or restore discipline," but rather "maliciously and sadistically to cause harm." *Hudson v.*

*McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992).

"Courts apply a separate standard to claims for excessive force in the use of handcuffs."

*Sachs v. Cantwell*, No. 10 Civ. 1663 (JPO), 2012 U.S. Dist. LEXIS 125335, 2012 WL 3822220,

at *14 (S.D.N.Y. Sept. 4, 2012).  Specifically, the court should "consider evidence that: [i] the

handcuffs were unreasonably tight; [ii] the defendants ignored the arrestee's pleas that the

handcuffs were too tight; and [iii] the degree of injury to the wrists." *Esmont v. City of New York*,

371 F. Supp. 2d 202, 215 (E.D.N.Y.2005) (citations omitted).  "Here, too, the inquiry must

reflect the totality of the circumstances, including any facts that bear on whether use of an

unusual degree of force may have been justified." *Pertusiello v. Cty. Of Suffolk,* No. 16-CV-

2931, 2019 U.S. Dist. LEXIS 141362, at *18, 2019 WL 4228485 (E.D.N.Y. Aug. 19, 2019).

"There is a consensus among courts in this circuit that tight handcuffing does not

constitute excessive force unless it causes some injury beyond temporary discomfort." *Lynch ex*

*rel. Lynch v. City of Mount Vernon,* 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008).  "These injuries

need not be severe or permanent, but must be more than 'de minimis.'" *Usavage v. Port Auth. of*

*N.Y. & N.J.,* 932 F. Supp. 2d 575, 594 (S.D.N.Y.2013) (internal quotation marks omitted); *see*

*also Washpon v. Parr*, 561 F. Supp. 2d 394, 407 (S.D.N.Y.2008); *see generally Corselli v.*

*Coughlin*, 842 F.2d 23, 26-27 (2d Cir.1988) (even if injuries suffered were not permanent or

severe, a plaintiff may still recover if force used was unreasonable and excessive).  Defendants

assert that Plaintiff has failed to produce any evidence of an injury to his wrists and therefore

summary judgment must be granted on this claim.   The Court agrees.  In response to

17

Defendants' motion Plaintiff argues "[u]pon visiting a neurologist, Plaintiff was diagnosed with a lesion of the radial nerve in his bilateral upper limbs. Plaintiff at this juncture, may seek surgery for his wrist pain in the future." Pl. Opp. at 20. However no medical records documenting the injury have been provided and not a shred of evidence has been adduced supporting this assertion. Accordingly, the undersigned respectfully recommends that Defendants' motion for summary judgment on Plaintiff's claim of excessive force be granted.

### D.  Qualified Immunity

Defendants argue that the Individual Defendants are protected from liability by the principles of qualified immunity.[5] Def. Mem. at 17. "A defendant is entitled to summary judgment on qualified immunity grounds when 'no reasonable jury, looking at the evidence in the light most favorable to, the plaintiff, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right.'" *Dobson v. Doughtery*, No. 17-CV-1014, 2020 U.S. Dist. LEXIS 176062, 2020 WL 8167269, at *12 (W.D.N.Y. Sept. 23, 2020), report and recommendation adopted, 2021 U.S. Dist. LEXIS 7706, 2021 WL 131030 (W.D.N.Y. Jan. 14, 2021) (quoting *Robinson v. Via*, 821 F.2d 913, 921 (2d Cir. 1987)). " [I]n the context of a qualified immunity defense to an allegation of false arrest, the defending officer need only show 'arguable' probable cause." *See Martinez v. Simonetti,* 202 F.3d 625, 636 (2d Cir. 2000). "Arguable probable cause. . . exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed." *Crenshaw v. City of Mount Vernon*, 372 Fed. Appx. 202 (2d Cir. 2010).

---

[5] Because the Court has recommended that Defendants' motion for summary judgment on Plaintiff's claim of excessive force be granted, the Court has not addressed Defendants' arguments that Officer Vicinanza is entitled to qualified immunity against any §1983 claim of excessive force.

"Though qualified immunity is ordinarily decided by the court, 'that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required' to resolve the factual disputes before the court makes its legal determinations." *Moroughan v. Cnty. of Suffolk*, 514 F. Supp. 3d 479, 542 (E.D.N.Y. 2021) (quoting *Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir. 1994)).  As recognized by the Court in *Moroughan*, "although the ultimate question of whether it was objectively reasonable for [defendants] to believe that [their] conduct did not violate a clearly established right, i.e., whether officers of reasonable competence could disagree as to the lawfulness of such conduct, is to be decided by the court, the jury must first 'resolve[ ] any disputed facts that are material to the qualified immunity issue." *Id*. at n. 31. (internal quotation omitted).  Here, where there are questions of fact regarding the appropriateness of the initial traffic stop, the results of Plaintiff's testing, whether or not Plaintiff smelled of alcohol and slurred his words and whether the required forms were completed correctly the Court cannot conclude as a matter of law Defendants are entitled to the defense of qualified immunity. *See, e.g., Moroughan v. Cnty. of Suffolk*, 514 F. Supp. 3d 479, 542 (E.D.N.Y. 2021) (factual disputes regarding probable cause for arrest "also preclude summary judgment on the issue of qualified immunity at this juncture because, construing the evidence most favorably to plaintiff, no reasonable officer would believe that these alleged actions were lawful, and the constitutional rights at issue were clearly established at the time of the incident"); *Kayo v. Mertz*,  531 F. Supp. 3d 774 (S.D.N.Y. 2021) (factual disputes regarding existence of probable cause make it "premature to resolve defendants' motion for summary judgment on the false arrest claim on the basis of qualified immunity. Viewing the disputed facts in the light most favorable to [plaintiff] a jury could conclude that a

reasonably competent officer would not have found probable cause to arrest for any of the above offenses, making [plaintiff's] unjustified arrest a violation of a clearly established constitutional right. Because the record plainly reveals the existence of genuine issues of material fact relating to the qualified immunity defense, the Court denies defendants' motion for summary judgment on this basis")(internal quotation omitted); *Vitalone v. City of New York*, No. 15 Civ. 8525 (JGK), 2018 U.S. Dist. LEXIS 51948, 2018 WL 1587591, at *6 (S.D.N.Y. Mar. 27, 2018) ("Because there are issues of fact relating to the actions of the plaintiff and the officers at the time of the arrest, and these issues relate to the reasonableness of the officers' belief that there was probable cause to arrest, the motion for summary judgment on the basis of qualified immunity is also denied").

Accordingly, the undersigned respectfully recommends the Court deny Defendants' motion for summary judgment on the basis of a qualified immunity defense.

### E.  Municipal Liability Claim

Defendants contend that Plaintiff cannot succeed on his claim against the County for municipal liability "because even at this juncture, after discovery is closed, he has no evidence that any County custom or policy existed which caused a violation of his constitutional rights" Def. Mem. at 23.  Accordingly, Defendants argue that summary judgment in their favor is appropriate on this claim.  In response, Plaintiff argues that "Suffolk County is liable under Monell because the Police Department failed to provide adequate, routine, and updated training to its employees."  Pl. Mem. at 25.   Specifically, Plaintiff argues that "the Police Department failed to provide adequate, routine, and updated training to its employees regarding Drug Recognition Evaluations," *id.*, and that Officer Vicinanza never received training on the use of ASP Chain handcuffs designed for larger subjects which training would have prevented Plaintiff's injury.  *Id*. at 29-30.

20

As Defendants correctly note, a municipal body may not be held liable under Section 1983 for the unconstitutional acts of its employees absent allegations that such acts are attributable to a municipal custom, policy or practice.  *See Monell v. Dep't of Social Servs. of the City of N.Y.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  To establish the existence of a municipal policy or custom, a plaintiff must allege:

> (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees.

*Walker v. City of New York*, 63 F. Supp. 3d 301, 311 (E.D.N.Y. 2014) (citation and internal quotation marks omitted). In other words, "[u]nder Monell, a municipality may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees." *Curry v. City of Syracuse*, 316 F.3d 324, 330 (2d Cir. 2003).  Moreover, Plaintiff's claim against the County based on failure to train can only be the basis of liability "if the municipality's deficient conduct was the cause of plaintiff's injury." *Smith v. City of New York*, No. 03-CV-7576 (NRB), 2005 U.S. Dist. LEXIS 7903, 2005 WL 1026551, at *9 (S.D.N.Y. May 3, 2005).  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011).

In *Liberta v. City of Rome*, No. 6:10-CV-1104, 2012 U.S. Dist. LEXIS 27007, 2012 W L 695851, at *3 (N.D.N.Y. Feb. 29, 2012) the Court denied defendants' motion for summary judgment with respect to plaintiff's municipal liability claim where the plaintiff alleged that the municipal policy clearly stated that all urine samples were to be taken in the hospital, plaintiff's sample was taken in the station house and the DRE officer testified that he was unaware of the

21

policy regarding urine samples. *Id.* at 2012 U.S. Dist. LEXIS 27007, at * 12. The Court opined that the officers testimony that "he was unaware of this policy, . . . supports plaintiffs' claim that the Rome PD regularly ignored it and tacitly authorized its officers to ignore it." *Id.* at 2012 U.S. Dist. LEXIS 27007, at * 13. Here, with respect to Plaintiff's claim for municipal liability arising out of Officers Vicinanza's and McMurray's failure to follow the Drug Recognition Evaluation policies, Plaintiff has failed to offer any evidence that the policy was routinely ignored or disregarded. As noted by Defendants, a jury may not be permitted to speculate that the requisite custom existed based solely on the officers' interaction with Plaintiff. *See City of Oklahoma City, v. Tuttle,* 471 U.S. 808, 816, 823-24, 105 S. Ct. 2427, 2236, 85 L. Ed. 2d 791 (1985) (Monell does not allow jury to infer custom or policy based on a single incident).

Similarly, with respect to Plaintiff's claim regarding the proper use of handcuffs, Plaintiff has failed to demonstrate that questions of fact exist regarding the proper training of officers on the use of the appropriate handcuffs on larger individuals. Plaintiff argues that Officer Vicinanza "testified that he received training on how to properly use handcuffs in 1991 and 1993 at the Police Academy. See Exhibit E, at p. 168:15-17. He received no additional training with regard to handcuffing an individual between 1993 and December 30, 2016" and that he "never received any documents involving handcuffing procedures," Pl. Opp. at 29, despite the issuance in 2011 of a Special Training Bulletin on the use of ASP chain handcuffs, which feature a longer handcuff chain to accommodate larger individuals. Pl Opp. at 28. However, Plaintiff fails to offer any proof that Officer Vicinanza's initially training was inadequate, that handcuffs have changed over the years or that the County was on notice that the handcuffs being used were inadequate for larger individuals.

22

Accordingly, the undersigned respectfully recommends that Defendants' motion for summary judgment be granted with respect to Plaintiff's municipal liability claims against the County.

### F. Pendent Jurisdiction

Defendants argues that once the Court dismisses Plaintiff's Section 1983 claims, the Court should decline jurisdiction over Gagliano's negligence claim.  Def. Mem. at  25. However, as discussed above, the Court does not recommend that Defendants' motion be granted in its entirety and therefore, jurisdiction over Plaintiff's state law claims is appropriate.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on the parties.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days.  Failure to file objections within this period waives the right to appeal the District Court's Order.  See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc*., No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).


Dated: Central Islip, New York
        August 29, 2022


                                        _____/s/_____
                                        ARLENE R. LINDSAY
                                        United States Magistrate Judge

23